# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL ACTION** |
| | ) | **No. 05-10231-RCL** |
| | ) | |
| **FRANK MERLINO** | ) | |
| **DEFENDANT** | ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

Now comes the defendant, Frank Merlino, in the above entitled Criminal Action and hereby respectfully submits the following Sentencing Memorandum to aid the court in sentencing. The defendant hereby sets forth all factors that the Court should consider in determining what sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553 (a).

## INTRODUCTION

Frank Merlino plead guilty on September 26, 2005 to a one count Information charging Escape in violation to 18 U.S.C. § 751. The guideline sentencing range is 15-21 months. PSR ¶ 124. However, Mr. Merlino respectfully requests that the court impose a sentence of time served, along with a period of three years supervised release, which is the maximum term of supervised release since this is a Class D Felony, pursuant to 18 U.S.C. § 3583(b). The

1

defendant was additionally ready to suggest either a period of home detention, or community confinement, but because the Probation Office has suggested these are not viable options, the defendant will not vigorously pursues these options.

The defendant respectfully suggests that this proposed sentence is a sentence that is "sufficient but not greater than necessary" to achieve the four purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2). United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (January 12, 2005). Under the circumstances of this case which include; (1) his extraordinary circumstances for absconding from home confinement; (2) the defendant's work history, commitment to education, and "positive" progress at the Coolidge House; (3) the defendant's work history, commitment to education, and "excellent" progress at Wyatt Detention Center; (4) potential sentencing disparity between the defendant and other inmates that walk away form home confinement and the need to avoid unwarranted sentencing disparities; (5) the defendant had personal property stolen while in South Carolina after his arrest by Federal Agents; (6) the defendant, through no fault of his won, was not able to be sanctioned administratively by the BOP; (7)the fact that he has been incarcerated and will continue to be on supervised release upon completion of his incarcerated sentence, and (8) Mr. Merlino's extensive cooperation in pleading guilty quickly and consenting that the prosecution proceed by way of information, instead of an indictment, thereby saving court resources, the proposed sentence is reasonable, sufficient and not greater than necessary.

## SENTENCING UNDER BOOKER

On January 12, 2005, the Supreme Court ruled that its Sixth Amendment holding in

Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004) and Apprendi v. New Jersey, 530

U.S. 466 (2000) applies to the Federal Sentencing Guidelines.  United States v. Booker, 543 U.S.

220, 125 S. Ct. 738, 756 (2005).  Given the mandatory nature of the Sentencing Guidelines, the

Court found "no relevant distinction between the sentence imposed pursuant to the Washington

statutes in Blakely and the sentences imposed pursuant to the Federal Sentencing Guidelines" in

the cases before the Court.  Id. at 751.  Accordingly, reaffirming its holding in Apprendi the

Court concluded that:

> [any] fact (other than a prior conviction) which is necessary to support a sentence
> exceeding the maximum authorized by the facts established by a plea of guilty or a jury
> verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.

Id. at 756. 1

Based on this conclusion, the Court further found those provisions of the federal

Sentencing Reform Act of 1984 that make the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), or

which rely upon the Guideline's mandatory nature, 18 U.S.C. § 3742(e), incompatible with its

Sixth Amendment holding.  Booker, 125 S.Ct. at 756.  Accordingly, the Court severed and

excised those provisions, "mak[ing] the Guidelines effectively advisory."  Id. at 757.

---

1 It should be noted that the fact-of-prior-conviction exception to the Apprendi rule is based on Almendarez-Torres
v. United States, 523 U.S. 224 (1998).  But the continued vitality of this case and the exception it created has been
called into question not only by the broad reasoning of Booker itself, which would seem to apply to all enhancement
facts, including facts of prior conviction, but also more recently by Shepard v. United States, 125 S.Ct. 1254 (2005).
Shepard sharply limits the Almendarez-Torres exception to the fact of prior conviction as determined by the judicial
record, and excludes facts about the conviction which are not contained in such conclusive records.  As Justice
Thomas notes, moreover, five justices agree that Almendarez-Torres was wrongly decided. 125 S.Ct. at 1264
(Thomas, J., concurring).

Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as revised by Booker, requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp.2004), but it permits the court to tailor the sentence in light of other statutory concerns as well. See § 3553(a); Booker 125 S. Ct. at 757. Therefore, under Booker, sentencing courts must treat the guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. § 3553(a).

In Booker, the U.S. Supreme Court, per Justice Stevens, ruled that the Federal Sentencing Guidelines were only advisory in nature and not mandatory. This decision was reached as an extension of Apprendi and Blakely because the U.S.S.G. requires upward departures when the sentencing court finds certain facts to exist. In the absence of the fact of a prior conviction, the aggravating factors must be determined by a jury beyond a reasonable doubt. The majority rejected the government's argument that there would only be an Apprendi/Blakely violation if the ultimate sentence exceeded the applicable maximum sentence for the crime. In rejecting the argument, the majority found that the remedy was to strike the "mandatory" provisions, paired with permitting the trial court to "consider" the guidelines and to impose a sentence that fulfills the standard sentencing goals found in 18 U.S.C. § 3553. In Justice Stevens' own language, it is now Congress' decision on what to do, "the ball now lies in Congress' court. The National Legislature is equipped to devise and install, long term, a sentencing system compatible with the Constitution that Congress judges best for the federal system of judges."

The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence sufficient but not greater than necessary, to comply with the purposes set forth in paragraph 2." Section 3553(a)(2) states that such purposes are:

4

**(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;**

**(B) to afford adequate deterrence to criminal conduct**

**(C) to protect the public from further crimes of the defendant; and**

**(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

In determining the minimally sufficient sentence, § 3553(a) further directs sentencing courts to consider the following factors:

1) **"the nature and circumstances of the offense and the history and characteristics of the defendant" §3553(a)(1);**

2) **"the kinds of sentences available" (§ 3553(a)(3);**

3) **"the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct §3553(a)(6); and**

4) **"the need to provide restitution to any victims of the offense." § 3553(a)(7).**

Other statutory sections also give the district court direction in sentencing. Under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to "recognize that imprisonment is not an appropriate means of promoting correction and rehabilitation" (emphasis added).

Under 18 U.S.C. § 3661, "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added). This statutory language certainly overrides the (now-advisory) policy statements in Part H of the

5

sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth. See U.S.S.G. § 5H1.  See also United States v. Nellum, Slip Copy, 2005 WL 300073, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind., Feb. 3, 2005) (Simon, J.) (taking into account fact that defendant, who was 57 at sentencing, would upon his release from prison have a very low likelihood of recidivism since recidivism reduces with age; citing Report of the U.S. Sentencing Commission, Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines, May 2004); United States v. Naylor, 359 F.Supp.2d 521, (W.D. Va. Mar. 7, 2005) (Jones, J)(concluding that sentence below career offender guideline range was reasonable in part because of defendant's youth (age 17) when he committed his predicate offenses and noting that in Roper v. Simmons, 543 U.S. 551, 125 S. Ct. 1183, 1194-96 (2005), the Supreme Court found significant differences in moral responsibility for crime between adults and juveniles).

The directives of Booker and § 3553(a) make clear that courts may no longer uncritically apply the guidelines.  Such an approach would be "inconsistent with the holdings of the merits majority in Booker rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in Booker directing courts to consider all of the § 3353(a) factors, many of which the guidelines either reject or ignore" United States v. Ranum, 353 F Supp. 2d 984, 985-86 (E.D. Wisc. Jan. 19, 2005) (Adelman, J).  As another district court judge has correctly observed, any approach which automatically gives "heavy" weight to the guideline range "comes perilously close to the mandatory regime found to be constitutionally infirm in Booker.  United States v. Jaber, 362 F.Supp.2d 365, 2005, (D. Mass. March 16, 2005) (Gertner, J).  See also

6

United States v. Ameline, 400 F.3d 646, 655-56 (9th Cir. Feb 9, 2005) (advisory guideline range

is "only one of many factors that a sentencing judge must consider in determining an appropriate

individualized sentence"), reh'g en banc granted, 401 F.3d 1007 (9th Cir. 2005).

> Justice Scalia explains the point well in his dissent from Booker's remedial holding:
>
>> Thus, logic compels the conclusion that the sentencing judge, after considering
>> the recited factors (including the guidelines), has full discretion, as full as what he
>> possessed before the Act was passed, to sentence any within the statutory range.
>> If the majority thought otherwise — if it thought the Guidelines not only had to be
>> 'considered' (as the amputated statute requires) but had generally to be followed
>> — its opinion would surely say so.

Booker, 125 S. Ct. at 791 (Scalia, J., dissenting in part).  Likewise, if the remedial majority

thought the guidelines had to be given "heavy weight," its opinion would have said so.  The

remedial majority clearly understood that giving any special weight to the guideline range

relative to the other Section 3553(a) factors would violate the Sixth Amendment.

In sum, in every case, a sentencing court must now consider all of the § 3553(a) factors,

not just the guidelines, in determining a sentence that is sufficient, but not greater than necessary,

to meet the goals of sentencing. And where the guidelines conflict with other sentencing factors

set forth in § 3553(a), these statutory sentencing factors should generally trump the guidelines.

See United States v. Denardi, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J, concurring in part,

dissenting in part) (arguing that since § 3553(a) requires sentence to be no greater than necessary

to meet the purposes of sentencing, imposition of sentence greater than necessary to meet those

purposes violates the statute and is reversible, even if within guideline range).

## THE OFFENSE

The instant offense occurred on May 24, 2004 when Mr. Merlino absconded from home confinement. As the court will see below, a walk away from a community based treatment center is generally treated as a Breach of Trust and Escape charges are not filed. The BOP has an internal, administrative mechanism for sanctioning these Breach of Trust cases. It is generally more likely that an individual will be charged if he walks away from a BOP minimum facility, as opposed to a community center.

## ARGUMENT

**Application of the Statutory Sentencing Factors**

As we just saw, under the Supreme Court's decision in <u>United States v. Booker</u>, 125 S.Ct. 738 (2005) a court must look to 18 U.S.C. § 3553(a), and impose a sentence that is "sufficient but not greater than necessary" to achieve the four purposes of sentencing set forth in § 3553(a)(2). <u>Booker,</u> 125 S.Ct. at 764-65. In imposing sentence, the Court must consider all of the factors set forth in § 3553(a)(1)-(7). The sentencing guidelines are no longer binding on the court. <u>Id</u>. Therefore, in the present case, the following factors must be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

1.      **Nature and circumstances of the offense and the history and characteristics of the defendant  § 3553(a)(1)**.

Mr. Merlino reports that he had excellent programming and work reports while at the Coolidge Halfway House along with schooling at the Bunker Hill Community College. He reports no positive urine screens for drug or alcohol. Defense counsel tried numerous times to directly obtain, by both letter and telephone calls, the Coolidge House records, but was ultimately told that this information could not be released. It was defense counsel's intention to verify how well Mr. Merlino was in fact doing. The Presentence Report categorizes Mr. Merlino's progress only as "positive." "The Community Corrections Center indicates that the defendant's adjustment while in the custody of the Bureau of Prisons was positive." (PSR, page 25, last sentence)

Mr. Merlino would also like to highlight his reason for leaving home confinement. While housed at FCI Yahzoo, Mississippi, Mr. Merlino worked as a clerk. In May, 2000, Mr. Merlino assisted BOP Staff to avert a riot between Mexican gang members and Mexican gang members were ultimately relocated to other prisons.2 Merlino also assisted in the prosecution of two gang members who introduced contraband through the visiting room. Merlino was transferred to FCI Forrest City in June 2000 and placed on Central Inmate Monitoring to protect his location. While at FCI Forest City Merlino reports having excellent work and programming reports. In February, 2003 Merlino was released to Boston Coolidge Halfway House where he was housed for approximately two months, and subsequently placed on home confinement. While on home confinement, Merlino continued working, attending Bunker Hill Community College and making payments to the Coolidge House. He also attended two life skill programs, attended Church and never had a positive drug or alcohol screening.

---

2 Defense counsel attempted, but was unable to verify this information.

On or about April 27, 2000, Merlino started receiving threatening telephone calls that he believed were Mexican gang members. The voice indicated that they had found Merlino from the BOP website under his inmate locator. Merlino also believed that he was followed one day on the bus. After this incident, Merlino packed his belongings and traveled to Myrtle Beach, South Carolina, where he worked as a personal trainer and a golf professional. In South Carolina, he lived a quiet, productive life. In addition to working two jobs, he attended Horry County Technical College and continued his education with computer aided design. He also donated time to the PGA of America's First Tee Program (see Exhibit). Upon his arrest in May, 2005, Merlino was returned to BOP custody and transported to Florence County Jail for designation.

It is also significant to note that when Merlino absconded from home confinement on May 24, 2004, he only had approximately two months left in BOP custody, for Merlino was due to be released from BOP custody on August 7, 2004.

The following Exhibits are attached to this memorandum in support of Mr. Merlino's sentencing request:

1. BOP Sanctions

    Table III, Code 200, Prohibited Acts, "**Escape from unescorted Community Programs** and activities and Open Institutions (minimum) and from outside secure institutions – without violence" **is sanctioned by disallowing "Ordinarily between 25% and 50% (14-27 days) of good conduct time credit available for year**

2. Letter from Case Manager, James O'Gara, Cornell Companies, Inc.

3. Wyatt Detainee Request form for coursework

4.  Wyatt Detainee Request form for tutoring and volunteer work

5.  First Tee Program brochure

6.  Police report verifying defendant's car was stolen in South Carolina

7.  Letter from defendant

**2.      The need for the sentence to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" § 3553(a)(2)(A).**

The defendant's proposed sentence is severe and adequate to reflect the goal of this factor. He has been in harsh pretrial detention conditions until his return to Massachusetts. This is grave punishment for an offense that is typically handled administratively.

**3.      The need for the sentence "to afford adequate deterrence to criminal conduct" § 3553(a)(2)(B).**

Given the unusual circumstances of this case, the defendant's proposed sentence will satisfy this condition and is therefore, appropriate.

**4.      The need for the sentence "to protect the public from further crimes of the defendant" § 3553(a)(2)(c).**

After the defendant was arrested, he lost everything that he had in his apartment when it was stolen (clothing, personal property, etc.) Additionally, his car was stolen and found in another state damaged. He suffered significantly from these total loses and learned a valuable lesson. Because he committed the offense due to fear of retaliation, and his loss of personal property after his arrest, it is unlikely that he will ever commit such a crime again.

5.   The need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner" § 3553(a)(2)(D).

While in custody at the Wyatt Detention Center, Mr. Merlino has attended many educational and rehabilitative programs:

1) Spanish II Class – conversational Spanish

2) Lifeskills Class – Advanced Program

3) Transitional Program (Resumes/Release Resources)

4) Computer Advanced Program – Advanced Level

5) Typing Class

Mr. Merlino has also provided a letter from his case manager, James O'Gara demonstrating excellent progress while incarcerated at Wyatt Detention Center. The letter indicates that he has maintained a positive attitude, he has remained infraction free, and actively participates in several programs. He is enrolled in several education programs and participates in the Transitional educational program. Mr. Merlino has also volunteered tutoring pre-G.E.D and G.E.D inmates in Math and English and receives excellent evaluations.

6.   The "kinds of sentences available." § 3553(a)(3).

In Booker the Supreme Court severed and excised 18 U.S.C. § 3553(b), the portion of the federal sentencing statute that made it mandatory for courts to sentence within a particular sentencing guidelines range. Booker, 125 S. Ct. at 756. This renders the sentencing guidelines advisory. Id. Therefore, the proposed sentence is available to the court.

7.   The "kinds of sentence and sentencing range" established under the Guidelines and "any pertinent policy statement" § 3553(a)(4) & (5).

12

The defendant respectfully moves this Court to depart downward because of duress due to a serious threat of violence ( U.S.S.G. § 5K2.12).

A.    This court should depart downward pursuant to U.S.S.G.
      § 5k2.12. Since Merlino committed the instant offense under duress.

United States Sentencing Guidelines § 5K2.12 provides that "[i]f the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense, the court may decrease the sentence below the applicable guideline range." A downward departure for duress can include implicit as well as explicit threats of physical harm. Whether there is implicit threat depends on whether a reasonable person in defendant's position would perceive a threat. The determination involves considering the actual intent of threatening, defendant's subjective understanding, and whether an objective third party could reasonably consider it a threat. United States v. Sachdev, 279 F.3d 25, 29 (1st Cir. 2002).

The circumstances of this case show that defendant's actions were caused by duress sufficient to warrant departure under U.S.S.G. § 5K2.12. Section 5K2.12 states that the extent of a downward departure granted on the grounds of duress "should depend on the reasonableness of the defendant's actions... and on the extent to which the conduct would have been less harmful under the circumstances as the defendant believed them to be."

8.    **The "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" §3553(a)(6).**

A.    **Imposition of a Guideline sentence would create a disparity.**

13

While the guideline imprisonment range is calculated correctly at 15 to 21 months, the defendant respectfully suggests that under Table III, Code 200, Prohibited Acts, "**Escape from unescorted Community Programs** and activities and Open Institutions (minimum) and from outside secure institutions – without violence" **is sanctioned by disallowing "Ordinarily between 25% and 50% (14-27 days) of good conduct time credit available for year."**

If the defendant is given a guideline sentence, this would create disparity in sentencing. It is rare that inmates committing this offense are charged criminally, rather most walk-aways are handled administratively by the BOP. In fact, Merlino was even told by Federal Agents in South Carolina that that the US Marshals were not interested in criminally charging him with escape.

In an effort to establish potential proof in sentencing disparity, the defendant submits the following list of inmates with the same offense and who were only sanctioned with a loss of goodtime. Defense counsel obviously has no way to verify this information and with this in mind submitted the following information to the Probation Office for possible verification. Defense counsel was told that the Probation Office did not have a way to verify this information. Notwithstanding these caveats, defense counsel submits the same.

### OTHER INMATES WITH SAME OFFNESE AND ONLY LOSS OF GOODTIME

1) Carmello Santiago - #13379-014 – 27 days loss of goodtime and loss of visitation/not charged
2) William O'Conner - #10842-017 - 27 days loss of goodtime/ hit with 200 Series incident/not charged
3) Louis Angelo - #107230014 - 27 days loss of goodtime and loss of visitation/not charged
4) Joseph Kelly - #14327-019 - 30 days loss of goodtime/loss of visitation/not charged
5) Rafael Martinez - #13327-018 - 40 days loss of goodtime/not charged
6) Richard Conrad - #15682-014 - 27 days loss of goodtime/not charged
7) Michael Onagel - #16244-019 - 35 days loss of goodtime/not charged
8) Joseph Madina - 40 days loss of goodtime/no new charge

9)  John Baird - #16785-014 - 27 days loss of goodtime/not charged

10) Daniel Tarbox - #12784-036 – 27 days loss of goodtime/not charged

## B. The defendant was charged on the last day of his sentence

It seems clear that the defendant was charged on the last day of his sentence.  The Criminal Complaint was sworn out on July 21, 2005 when the defendant was due to be released on July 22, 2005.  The Presentence Report states that the defendant was in federal custody on an unrelated case from May 11, 2005 through July 22, 2005.   This factual timeline supports the defendant's position that because the BOP failed to get the defendant to MCC New York in a timely fashion, the designated facility where the defendant could be administratively sanctioned, the only available means of sanction left was to charge the defendant.

## C.    Timeline

- On May 10, 2005 Merlino is arrested by Secret Service who contacts the Boston U.S. Marshal's office.
- After his arrest, Merlino goes to Florence County Jail, SC, where he remains for 8 weeks (maximum security) waiting for designation by the BOP staff in Boston. **THIS IS NOT BOP FACILITY SO THEY CAN NOT SANCTION DEFENDANT**
- On June 20, 2005, Merlino is designated to MCC New York.  His file is sent to MCC New York.
- On June 22, 2005, Merlino begins transfer process.
- Merlino goes to three county jails during the transfer process.
- Lexington County Jail South Carolina – 1 week/Spartanburg County Jail, South Carolina - 2 weeks;  **THESE ARE NOT BOP FACILITIES SO THEY CAN NOT SANCTION DEFENDANT**
- Merlino arrives at USP Atlanta holdover awaiting transfer on the Marshal's airlift. Merlino is held in lock down.  This is the first place where defendant could have been served with 200 series write-up. Because Merlino gets stuck in Atlanta, he never makes to MCC New York.  Defendant speculates that if he made it to New

York, he never would have been charged. Defendant serves his 75 remaining days, but defendant is never sanctioned with the 27-40 days loss of good time.

- Atlanta City Detention Center – City Jail – Merlino is no longer a BOP inmate (held 1 week)
- On July 18, 2005 Merlino is taken to airlift but then turned away because he is too near release. Merlino is now to be released from USP Atlanta.
- On July 19, 2005 Merlino meets with case manager MacDonald who completes release paperwork and notifies records of his release on July 22, 2005 from USP Atlanta.
- USP Atlanta records department contacts BOP Boston of his release.
- Merlino's disciplinary report for the walk-away is at MCC New York.
- Because of high volume of inmate transfers Merlino never made it to MCC New York.
- BOP Staff in Boston determines that Merlino never made it to MCC New York and sanctioned the 27-41 days loss of good time
- Escape charges and detainer are filed on the last day of his sentence.
- July 23, 2005 Merlino is transferred to Atlanta City Detention Center for 1 week then to Paulding County Jail for 1 night then airlifted to Manchester NH to Wyatt Detention Center
- Merlino was told by his case Manager at USP Atlanta that he would be brought before Magistrate in Atlanta.
- On August 2, 2005 Merlino is brought before Magistrate, informed of charge, and of Rule 20.
- Merlino attempts to Rule 20 this matter, to save all parties time and resources, but is denied.
- Merlino is returned to USP Atlanta holdover where he waits 9 more days before being transferred to Boston via Marshall's airlift.
- Merlino is brought before Charles B. Swartwood, III, Chief, United States Magistrate Judge, United States District Court, District of Massachusetts, Worcester, on August 4, 2005.

Mr. Merlino suffered significantly and endured hardship while in custody at these various institutions.

**9.    The need to provide restitution to any victims of the offense**

Restitution is not a factor in this case.

**CONCLUSION**

For all of the foregoing reasons, Frank Merlino requests the Court impose a sentence of time served, along with a period of three years supervised release, which is the maximum term of supervised release. All of the facts and mitigating circumstances involved create a compelling argument for a non-guideline sentence. The defendant suggests that this sentence is sufficient, but not greater than necessary to comply with the purposes and statutory directives set forth in 18 U.S.C. § 3553 and that the defendant's sentencing recommendation takes into account all of these factors.

Respectfully Submitted,
FRANK MERLINO
By his attorney

Date: December 20, 2005.

  /s/ Glen P. Randall
Glen P. Randall
Murphy & Randall, LLP
50 Burlington Mall Road, Suite 100
Burlington, Massachusetts 01803
(781) 238-0300

CERTIFICATE OF SERVICE

I, Glen P. Randall, hereby certify that a true copy of the above document was served upon Assistant United States Attorneys James Lang by mailing a copy of the same, postage prepaid, on December 20, 2005.


Glen P. Randall


  /s/ Glen P. Randall_____
Attorney for the defendant

PS 5270.07
CN 12 10/11/2000
Chapter 4, Page 7

[TABLE 3 (Cont'd)
HIGH CATEGORY

| CODE | PROHIBITED ACTS | | SANCTIONS |
|------|-----------------|---|-----------|
| 200 | Escape from unescorted Community Programs and activities and Open Institutions (minimum) and from outside secure institutions--<u>without</u> violence. | A. | Recommend parole date rescission or retardation. |
| 201 | Fighting with another person | B. | Forfeit earned statutory good time or non-vested good conduct time up to 50% or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended) |
| 202 | (Note to be used) | | |
| 203 | Threatening another with bodily harm or any other offense | | |
| 204 | Extortion, blackmail, protection: Demanding or receiving money or anything of value in return for protection against others, to avoid bodily harm, or under threat of informing | | |
| 205 | Engaging in sexual acts | B.1 | Disallow ordinarily between 25 and 50% (14-27 days) of good conduct time credit available for year (a good conduct time  sanction may not be suspended). |
| 206 | Making sexual proposals or threats to another | | |
| 207 | Wearing a disguise or a mask | | |
| 208 | Possession of any unauthorized locking device, or lock pick, or tampering with or blocking any lock device (includes keys), or destroying, altering, interfering with, improperly using, or damaging any security device, mechanism, or procedure | C. | Disciplinary Transfer (recommend). |
| | | D. | Disciplinary segregation (up to 30 days). |
| 209 | Adulteration of any food or drink | E. | Make monetary restitution. |
| 210 | (Not to be used) | F. | Withhold statutory good time] |
| 211 | Possessing any officer's or staff clothing | | |



**CORNELL**

Cornell Companies, Inc.
People Changing People

December 12, 2005

Attorney Glen Randell
Murphy and Randell, LLC
50 Burlington Mall Rd.
Suite 100
Burlington, MA 01803

                    **RE:  Merlino, Frank**

Dear Mr. Randell:

Please be advised that detainee Frank Merlino, #10381-018, was received at the Donald
Wyatt Detention Facility on August 3, 2005. He is being held for the United States
Marshals Service- Massachusetts District on escape (flight) charges.

Since being detained at this facility, Mr. Merlino has maintained a positive attitude and
adjustment. He has remained infraction free. Mr. Merlino has actively participated in
several programs offered to the detainees at this facility. He is currently enrolled in
several educational programs including Spanish, Typing, and History. He has
participated in the Transitional educational program which teaches students resume and
job search skills. Mr. Merlino was hired as a tutor to assist students in Math and English
who are preparing for their G.E.D. He has received excellent evaluations from the staff
in charge of his work performance.

Mr. Merlino has attempted to improve himself by his participation in the programs
provided to the detainees at this facility. He has put forth a sincere effort to improve
himself by attending and participating in programs that will allow him to create positive
changes in his life.

If you should have any questions, please feel free to contact my office at (401) 729-1190
at extension 154.

Sincerely,

James O'Gara
Case Manager

*EDUCATION*



## DONALD W. WYATT DETENTION FACILITY

### DETAINEE REQUEST FORM
### DEMANDA DE DETENIDO



**CORNELL**

Name / El Nombre    FRANK MERLINO

Date / La fecha    10/3/05    Housing / Casa    D-2

**INSTRUCTIONS:** Please check the problem or request area. Be specific about what action you want. This is not a grievance form.

**LAS INSTRUCCIONES:** Por favor verifique el problema o área de la demanda. Sea específico sobre qué acción que usted quiere. Ésta no es una forma de agravio.

- ☐ Appeal of discipline / Apelacion de disciplina
- ☐ Classification appeal / La clasificacion de apelacion
- ☐ Waive 24 hour hearing / Renuncie tu sita de 24 hora
- ☐ Waive hearing appearance / Renucie tu sita de precencia
- ☐ Inmate housing unit worker / Unidad de trabajadores
- ☐ Inmate work force / Union de presos
- ☒ Programs, specify / Los Programas, especifio
    EDUCATION

- ☐ Property / La Propiedad
- ☐ Laundry / El Lavanderia
- ☐ Inmate accounts / Las cuentas del preso
- ☐ Staff hearing assistant / Assistencia displinaria
- ☐ Education / Educacion
- ☐ Other, specify / Otro, especifiqo

Request / La demanda    I WOULD LIKE TO SIGN-UP
FOR THE TRANSITIONAL COURSE WHICH
YOU ARE OFFERING.
PLEASE PUT ME ON THE CLASS
LIST THANK YOU.

Detainee signature/Detenido La firma    [signature]    Date / La fecha    10/3/05

Staff receiving the request/Peronal que
recibe la demanda    Date / La fecha

Action taken / Accion tomada    SCHEDULED    TRANSITION EMPLOYMENT THUR
8:30-400

Response / La contesta    START  10-13-05

Staff Signature/
La firma    [signature]    Date / La fecha    10-15-05

Original    Completed form forwarded to appropriate file / El original - Completó forma remitida al archivo apropiado
Copy 1    Completed form returned to inmate with action noted / Copie 1 - Completó forma devuelta al preso con acción notada
Copy 2    Retained by inmate at time of request / Copie 1 - Completó forma devuelta al preso con acción notada

EDUCATION



## DONALD W. WYATT DETENTION FACILITY

### DETAINEE REQUEST FORM
### DEMANDA DE DETENIDO



CORNELL

Name / El Nombre      FRANK MERLINO

Date / La fecha      9/20/05                  Housing / Casa      D-2

INSTRUCTIONS: Please check the problem or request area. Be specific about what action you want. This is not a grievance form.
LAS INSTRUCCIONES: Por favor verifique el problema o área de la demanda. Sea específico sobre qué acción que usted quiere. Ésta no es una forma de agravio.

- ☐ Appeal of discipline / Apelacion de disciplina
- ☐ Classification appeal / La clasificacion de apelacion
- ☐ Waive 24 hour hearing / Renuncie tu sita de 24 hora
- ☐ Waive hearing appearance / Renucie tu sita de precencia
- ☐ Inmate housing unit worker / Unidad de trabajadores
- ☐ Inmate work force / Union de presos
- ☐ Programs, specify / Los Programas, especifio

- ☒ Property / La Propiedad
- ☐ Laundry / El Lavanderia
- ☐ Inmate accounts / Las cuentas del preso
- ☐ Staff hearing assistant / Assistencia displinaria
- ☐ Education / Educacion
- ☐ Other, specify / Otro, especifiqo

Request / La demanda    I would like to donate time to tutor GED English / math / Spanish / Also teach fitness nutrition program. Thank you.

Detainee signature/Detenido La firma                           Date / La fecha   9/20/05

Staff receiving the request/Peronal que recibe la demanda                        Date / La fecha   9-21/5

Action taken / Accion tomada   I will assign you to begin this week. Start 9-21-05

Response / La contesta

Staff Signature/ La firma                                       Date / La fecha   9-21-05

Original     Completed form forwarded to appropriate file / El original - Completó forma remitida al archivo apropiado
Copy 1       Completed form returned to inmate with action noted / Copie 1 - Completó forma devuelta al preso con acción notada
Copy 2       Retained by inmate at time of request / Copie 1 - Completó forma devuelta al preso con acción notada



NON PROFIT ORG.
U.S. POSTAGE
**PAID**
PERMIT NO XXXX
JACKSONVILLE, FL

As a Founding Partner of The First Tee, the USGA has provided more than $13 million in grants on both the local and national levels. These vital funds are used for costs associated with golf course and range access, instruction, transportation and equipment.

In 2005, a key initiative was announced by USGA President Fred Ridley to expand the USGA Members Program to one million members. The Members Program provides a vital link between the USGA and golfers around the country. When a member passes along knowledge gained through his or her USGA membership, the USGA's mission to encourage the traditions and values is achieved. On behalf of The First Tee, please support the USGA and become a member today. Visit **www.usga.org** for more information.

### SAVE THE DATE!!
### The First Tee Annual Meeting
### February 14 - 17, 2006
### St. Augustine, Fla.

## UPCOMING Events:

**August 15 -** PGA TOUR player Padraig Harrington hosts a golf clinic to benefit The First Tee of Cleveland
**September 2-4** - Wal-Mart First Tee Open at Pebble Beach
**September 17** - "Humana Day" at The First Tee of San Antonio
**September 20 -** The First Tee announces the RBS Achievers of the Year at the Presidents Cup
**September 21 -** The First Tee of Roanoke Valley Grand Opening
**October 15 -** "Humana Day" at The First Tee of Miami

Founding Corporate Partner



© 2005 World Golf Foundation, Inc. All rights reserved.



World Golf Village
425 South Legacy Trail
St. Augustine, FL 32092

T (904) 940-4300
F (904) 940-1556

www.thefirsttee.org

**SUPPLEMENTAL INCIDENT REPORT**

INQ. 05067983

| ☒ ORIGINAL REPORT | ☐ SUPPLEMENTAL REPORT | ☐ ADDITIONAL VICTIMS | ☐ ADDITIONAL STOLEN PROPERTY | PAGE 2 of 2 |
| ☐ MODIFIES ORIGINAL | ☐ CASE STATUS CHANGE | ☐ ADDITIONAL OFFENDERS | ☐ ADDITIONAL RECOVERED PROPERTY | |

**VICT./SUBJ. I.D. OVERFLOW**

| ☐ COMPLAINANT | NAME (LAST, FIRST, MIDDLE) MERLINO ELIZABETH | VICTIM RELATIONSHIP TO SUBJECT #1 #2 #3 | RESIDENT JSOU | RACE | SEX | AGE | D.O.B. |
| ☒ VICTIM # | | | | | | | |
| ☐ SUBJECT # | HEIGHT WEIGHT HAIR EYES FACIAL HAIR, SCARS, TATOOS, GLASSES, CLOTHING, PHYSICAL PECULIARITIES, ETC. | | | | | | |
| ☐ RUNAWAY | | | | | | | |
| ☐ WANTED | ADDRESS CITY STATE ZIP CODE LOCATION NO. DAY PHONE H B EVENING PHO H | | | | | | |
| ☐ WARRANT | | | | | | | |
| ☐ ARREST | ☐ VICTIM NO. ___ : VISIBLE INJURY: ☐ NO ☐ YES COMPLAINT OF NON-VISIBLE INJURIES: ☐ NO ☐ YES VICTIM USING ALCOHOL: ☐ NO ☐ YES ☐ UNK. ☐ TWO-MAN VEHICLE ☐ DETECTIVE/SPLASMT. ☐ A | | | | | | |
| ☐ JAIL | EXPLAIN: DRUGS: ☐ NO ☐ YES TYPE: ☐ UNK. ☐ ONE-MAN VEHICLE ☐ OTHER ☐ A | | | | | | |
| ☐ SUMMONS | ☐ SUBJECT NO._____ : USING ALCOHOL ☐ NO ☐ YES | | | | | | |
| ☐ | :USING DRUGS: ☐ NO ☐ YES ➡ TYPE: ☐ UNK. | | | | | | |

| ☐ COMPLAINANT | NAME (LAST, FIRST, MIDDLE) | VICTIM RELATIONSHIP TO SUBJECT #1 #2 #3 | RESIDENT JSOU | RACE | SEX | AGE | D.O.B. |
| ☐ VICTIM # | | | | | | | |
| ☐ SUBJECT # | HEIGHT WEIGHT HAIR EYES FACIAL HAIR, SCARS, TATOOS, GLASSES, CLOTHING, PHYSICAL PECULIARITIES, ETC. | | | | | | |
| ☐ RUNAWAY | | | | | | | |
| ☐ WANTED | ADDRESS CITY STATE ZIP CODE LOCATION NO. DAY PHONE H B EVENING PHO H | | | | | | |
| ☐ WARRANT | | | | | | | |
| ☐ ARREST | ☐ VICTIM NO. ___ : VISIBLE INJURY: ☐ NO ☐ YES COMPLAINT OF NON-VISIBLE INJURIES: ☐ NO ☐ YES VICTIM USING ALCOHOL: ☐ NO ☐ YES ☐ UNK. ☐ TWO-MAN VEHICLE ☐ DETECTIVE/SPLASMT. ☐ A | | | | | | |
| ☐ JAIL | EXPLAIN: DRUGS: ☐ NO ☐ YES TYPE: ☐ UNK. ☐ ONE-MAN VEHICLE ☐ OTHER ☐ A | | | | | | |
| ☐ SUMMONS | ☐ SUBJECT NO._____ : USING ALCOHOL ☐ NO ☐ YES | | | | | | |
| ☐ | :USING DRUGS: ☐ NO ☐ YES ➡ TYPE: ☐ UNK. | | | | | | |

**NARRATIVE**

| JURISDICTION OF THEFT LAW ENFORCEMENT AGENCY | JURISDICTION OF RECOVERY LAW ENFORCEMENT AGENCY |
| HCPD | |

**VEH./GUN/ETC. 1**

| STATUS | TYPE | VIN AND/OR LICENSE NO. 1YVHP84D645N50252 | BOAT HULL NO. AND/OR REG. NO. | 856 TKG |
| ☒ STOLEN | ☒ VEHICLE | SERIAL AND/OR OWNER APPLIED NO. | | STATE SC |
| ☐ RECOVERED | ☐ GUN | YEAR OF REGISTRATION | YEAR OF EXPIRATION | YEAR 2004 | MAKE MAZDA | TYPE |
| ☐ FOUND | ☐ BOAT | | | | | |
| ☐ TOWED | ☐ LICENSE PLATE | MODEL 6S | STYLE 4DR | COLOR RED | BRAND NAME | CA |
| ☐ SUSPECT | ☐ SECURITIES/BONDS, STOCKS | NIC NO. | DENOMINATION | ISSUER | SECURITIES DATE |
| ☐ VICTIM | ☐ ARTICLE | MISCELLANEOUS | | | |

**PROPERTY EST.**

| TYPE (GROUP) | 03 | | TOTAL VALUE |
| STOLEN | -24000- | | 24000 |
| DAMAGED | | | |
| BURNED | | | |
| RECOVERED | | | |
| SEIZED | | | |

**ADMINISTRATIVE**

| SUBJECT IDENTIFIED | SUBJECT LOCATED | ☒ ACTIVE ☐ ADM. CLOSED | ☐ ARRESTED UNDER 18 | ☐ EX-CLEAR UNDER 1 |
| ☐ YES ☒ NO | ☐ YES ☒ NO | ☐ UNFOUNDED | ☐ ARRESTED 18 AND OVER | ☐ EX-CLEAR 18 AND O |
| REASON FOR EXCEPTIONAL CLEARANCE: 1. ☐ OFFENDER DEATH. 2. ☐ NO PROSECUTION. 3. ☐ EXTRADITION DENIED. 4. ☐ VICTIM DECLINES COOPERATION. 5. ☐ JUVENILE-NO C | | | | |
| REPORTING OFFICER(S) D. WEAVER | DATE 8-8-05 | UNIT NO. 440 | APPROVING OFFICER | DATE | U NUM |
| | | | FOLLOW-UP OFFICER INVESTIGATION ☐ YES ☐ NO | | |

AGENCY I.D.
SCO 260400

INCIDENT REPORT

CASE NUMBER
INQ. 05067983

NCIC

| INCIDENT TYPE | | COMPLETED | FORCED ENTRY | PREMISE TYPE | UNITS ENTERED | TYPE VIC |
|---|---|---|---|---|---|---|
| 1. | STOLEN MOTOR VEHICLE | ☒YES ☐NO | ☐YES ☒NO | 18 | | ☒Individual |
| 2. | | ☐YES ☐NO | ☐YES ☐NO | | | ☐Business ☐Financial |
| 3. | | ☐YES ☐NO | ☐YES ☐NO | | | ☐Government ☐Relig. Or ☐Soc./Pul ☐Other ☐Unknown ☐Police Of |

**EVENT**

INCIDENT LOCATION (SUBDIVISION, APARTMENT AND NUMBER, STREET NAME AND NUMBER): 246 KENT LANE   MYRTLE BEACH SC   ZIP CODE 29579   WEAPON TYPE

| INCIDENT DATE | 24 HR CLOCK | TO | DATE | 24 HR CLOCK | DISP. DATE | DISP. TIME | TIME ARRIVED | DEPART TIME | LOCATION NO. |
|---|---|---|---|---|---|---|---|---|---|
| 7-2-05 | 1200 | | 8-8-05 | 2100 | 8-8-05 | 2113 | 2121 | | 17 |

COMPLAINANT'S NAME (LAST, FIRST, MIDDLE): MERLINO DENISE   RELATIONSHIP TO SUBJECT #1 UNK #2 #3   RESIDENT •J S O U   RACE W   SEX F   AGE 44   ETH. N   DAY TIME PHONE (339) 221-0499   EVENING PHO SAME

ADDRESS: 3 HIGHROCK ROAD   CITY STONEHAM   STATE MA   ZIP CODE 02180   LOCATION NO. O/S

**VICTIM NO. 1**

VICTIM'S NAME (LAST, FIRST, MIDDLE): MERLINO, ELIZABETH   RELATIONSHIP TO SUBJECT #1 UNK #2 #3   RESIDENT •J S O U   RACE W   SEX F   AGE 70   ETH. N   DAY TIME PHONE (781) 233-4649   EVENING PHO SAME

| HEIGHT | WEIGHT | HAIR | EYES | FACIAL HAIR, SCARS, TATTOOS, GLASSES, CLOTHING, PHYSICAL PECULIARITIES, ETC |
|---|---|---|---|---|
| 503 | 135 | BRN | BRN | |

ADDRESS: 9 HAMMERSMITH DRIVE   CITY SAUGUS   STATE MA   ZIP CODE 01906   LOCATION NO. O/S

VISIBLE INJURY (VICT 1): ☐YES NO☒ EXPLAIN–   COMPLAINT OF ANY NON-VISIBLE INJURIES: ☐YES N

VICTIM (NO 1) USING: ALCOHOL ☐YES NO☒ UNK ☐   DRUGS: ☐YES NO☒ UBK ☐ TYPE:

TWO-MAN VEH ☐   ONE-MAN VEH ☐   DETECTIVE/SPL ASMT ☐   OTHER☐   ALONE ☐   ASSISTED ☐   *J–This Jurisdiction.   S–State.   O–Out of State.   U–Unknown

**SUBJECT NO. 1**

☒SUSPECT
☐RUNAWAY
☐WANTED
☐WARRANT
☐ARREST
☐JAIL
☐SUMMONS

NAME (LAST, FIRST, MIDDLE): UNKNOWN   RACE   SEX   AGE   ETH.   DATE OF BIRTH   HEIGHT   WEIGHT   HAIR

FACIAL HAIR, SCARS, TATTOOS, GLASSES, CLOTHING, PHYSICAL PECULIARITIES, ETC.

ADDRESS   CITY   STATE   ZIP CODE   LOCATION NO

SUBJECT (NO. 1) USING: ALCOHOL: ☐YES NO☐ UNK ☒   DRUGS ☐YES NO☐ UNK☒ TYPE:   ARRESTED NEAR OFFENSE SCENE ☐YES NO☒   TOTAL # ARRESTED 0   DATE/TIME OF OFFENSE   DATE/TIME OF ARREST

**NARRATIVE**

THE COMP. UNK IS ALSO THE VICTIM'S DAUGHTER, STATES HER BROTHER HAD THE VICTIM'S 2004 MAZDA (SC 856 TK6) UNTIL HE WAS SENT BACK TO JAIL FOR A PROBATION VIOLATION. THE COMP. DISCOVERED THE VEHICLE MISSING WHEN SHE CAME TO MYRTLE BEACH TO CLEAR OUT HER BROTHER'S APARTMENT. THE VEHICLE WAS UP TO DATE IN PAYMENTS AND WAS NOT TOWED. ALTHOUGH T COMP DOES NOT KNOW WHO HAS TAKEN THE VEHICLE, SHE DOES BELIEVE THAT HER BROTHER'S GIRLFRIEND MAY KNOW THE WHEREABOUTS OF THE VEHICLE. T GIRLFRIEND IS A W/F ANTIONETTE RUIZ FROM READING, CA. R/O PLACED THE VEHICLE INTO NCIC.

JURISDICTION OF THEFT LAW ENFORCEMENT AGENCY: HCPD   JURISDICTION OF RECOVERY LAW ENFORCEMENT AGENCY

**PROPERTY EST.**

| TYPE (GROUP) 03 | | | | | TOTAL VALUE |
|---|---|---|---|---|---|
| STOLEN | 24000 - | | | | -24000- |
| DAMAGED | | | | | |
| BURNED | | | | | |
| RECOVERED | | | | | |
| SEIZED | | | | | |

**ADMINISTRATIVE**

| SUBJECT IDENTIFIED | SUBJECT LOCATED | ☒ACTIVE  ☐ADM. CLOSED | ☐ARRESTED UNDER 18 | ☐EX-CLEAR UNDER 18 |
|---|---|---|---|---|
| ☐YES  ☒NO | ☐YES  NO☒ | ☐UNFOUNDED | ☐ARRESTED 18 AND OVER | ☐EX-CLEAR 18 AND OVER |

REASON FOR EXCEPTIONAL CLEARANCE:  1.☐OFFENDER DEATH   2.☐NO PROSECUTION   3.☐EXTRADITION DENIED   4.☐VICTIM DECLINES COOPERATION   5.☐JUVENILE-NO CUSTODY

| REPORTING OFFICER(S) | DATE | UNIT NUMBER | APPROVING OFFICER | DATE | UNIT NUMB |
|---|---|---|---|---|---|
| D WEAVER | 8-8-90 | 440 | | | |

FOLLOW-UP   OFFICER

**HORRY COUNTY POLICE DEPARTMENT**
Victim's Rights Form

Case #: _05067983_
Suspect: _UNK_

As a victim or witness of a crime, you have the following rights:

- To be treated with dignity and compassion and to be protected from intimidation and harm,
- To be protected from threats or harassment,
- To due process in criminal court proceedings,
- To preservation of property and employment and reparations, if applicable,
- To be notified of suspects release, arrest, or escape,
- To be informed concerning the criminal justice system,
- To be notified of and be present for the bond hearing.

HCPD
( 843) 248-1520

Local victim assistance and social service providers:

| | | | |
|---|---|---|---|
| Citizens Against Spouse Abuse: | 448-6206 | Family Court / CASA: | 915-5085 |
| Rape Crisis Center: | 448-3180 | Mental Health: | 347-4888 |
| Department of Social Services: | 365-5565 | Police Dept. Victim's Advocate: | 248-1521 |
| Solicitor's Office Victim's Advocate: | 915-5460 | | |

As a victim of a crime, you may be eligible for victim's compensation benefits or other social services assistance. To be eligible, you must report the crime within 48 hours of occurrence and you must cooperate completely with law enforcement and judicial system officials. If you have any questions concerning eligibility, or need assistance in applying for victim's compensation benefits, please contact the Law Enforcement Victim's Advocate at 248-1521. Any questions you have concerning your case may be directed to the Law Enforcement Victim's Advocate. Please understand that the Victim's Advocate will not provide you with any information that may hinder an ongoing investigation.

FOR CRIMINAL DOMESTIC VIOLENCE VICTIMS: I have been informed of: (1) the right to initiate judicial proceedings, (2) the importance of preserving evidence, (3) the right to be transported to safety, and if applicable, (4) what an Order of Protection is and how to obtain one.

*I WANT TO ATTEND THE BOND HEARING     ___YES   X NO
*I WANT TO BE NOTIFIED UPON SUSPECT'S RELEASE     X YES   ___NO

SC Statute 16-3-1506 requires that you, the victim, provide law enforcement officials with a current contact number and a current address if you want to exercise your right of notification. If either changes, notify the law enforcement victim's advocate immediately.

Victim Contact Information: This information is essential in order for you to be notified. If you have no phone, you must notify the department on the proper method to contact you.

Name: _ELIZABETH MERLINO_     Mailing Address: _____

_9 HAMMERSMITH DRIVE_

_SAUGUS_          _MA_      _01906_     _(781) 233-4649_
City            State    Zip Code      Contact Phone Number

Officer's Signature / Date: _O Weaver   8-8-05_

Victim's Signature / Date: X _Dennis Mahon for Elizabeth Mahon_

Revised: 10/1/03

Frank R. Merlino
10381-108 D2
Wyatt Detention Center
950 High Street
Central Falls, RI 02863


Honorable Judge R.C. Lindsay
Untied States District Courthouse
1 Courthouse Way
Boston, Massachusetts 02210

December 6, 2005                                    RE: Case# 05-10231 RCL


Dear Your Honor;
I wanted to write you this second letter because there has been additional information
that I have received that I would like you to know about.

I have been offered an excellent job opportunity working with the First Tee Program
at Blackmoore Country Club in Myrtle Beach, South Carolina. This program works with
inner city kids to introduce them to golf and the ethics of the game which can
be used in life. I am excited about the opportunity to work with the kids but due
to the fact that I would need the courts permission to transfer my Supervised Release
to South Carolina I am asking your help.

While on escape status I lived in the Myrtle Beach area. Because of the vast amount